Filed 6/3/24  Lady Freethinker v. Google CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LADY FREETHINKER | H050875 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 21CV390154) |
| v. | |
| GOOGLE LLC, | |
| Defendant and Respondent. | |

YouTube requires its users to accept and agree to comply with its terms of service as a condition of using the website.  Those terms of service provide, among other things, that YouTube will not allow videos depicting animal abuse to be shown on its platform.  Despite those terms, some animal abuse videos have appeared on YouTube.

Plaintiff and appellant Lady Freethinker, a nonprofit organization, contends that by accepting the terms of service to use YouTube, it entered into a contract with YouTube's parent company, Google LLC, which breached the contract and violated other state laws by allowing the animal abuse videos to be shown.

Google successfully demurred on the ground that Lady Freethinker's claims are barred by the Communications Decency Act of 1996, 47 U.S.C. § 230 (section 230), which provides immunity to interactive computer services that a plaintiff seeks to treat as a publisher or speaker of information from another content provider.

On appeal, Lady Freethinker contends that section 230 does not bar its claims because Google's liability derives from its contractual obligations rather than from its

actions as a publisher or speaker of third-party information. We conclude that, although Lady Freethinker frames its causes of action as contract-based, ultimately those claims seek to treat Google as a publisher or speaker of third-party information and are therefore barred by section 230. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. The alleged contract

#### 1. YouTube's alleged promises

YouTube is an internet-based video sharing service and a wholly owned subsidiary of Google LLC. Google and YouTube are the first and second-most visited websites in the world, respectively, according to one source cited by Lady Freethinker.

Users may access, upload and view videos on YouTube only if they accept and agree to comply with YouTube's and Google's terms of service and community guidelines. In exchange, Lady Freethinker alleges, YouTube and Google make certain promises on which their users rely when accepting those terms. Among other things, they promise that they will not allow animal abuse, torture, or cruelty videos to be shown on the YouTube platform.

YouTube's community guidelines specify what type of content is not allowed on its platform, which entails various content "including videos, comments, likes and thumbnails." YouTube states that its community guidelines "are a key part of our broader suite of policies and are regularly updated in consultation with outside experts and YouTube creators to keep pace with emerging challenges."

The community guidelines claim that "[v]iolent or gory content intended to shock or disgust viewers, or content encouraging others to commit violent acts, are not allowed on YouTube." The guidelines also include a "violent or graphic content policies" section

---

[1] We take our facts from those properly pleaded in the operative complaint in this action, "disregarding contentions, deductions, and conclusions of fact or law." (*County of Santa Clara v. Superior Court* (2023) 87 Cal.App.5th 347, 355, fn. 2.)

2

with an "animal abuse" subpart. They define "animal abuse" as referring to "content that shows the malicious infliction of serious physical or psychological harm that causes an animal to suffer."

Specific examples of this type of disallowed content include "[c]ontent that shows animal suffering, neglect, or mistreatment to shock the viewer or glorify the abuse, and doesn't give enough educational, documentary, scientific, or artistic context," and "[t]he staged rescue of animals where the animals are intentionally harmed or placed in dangerous scenarios for dramatic effect."

In addition to the policies prohibiting such content, Lady Freethinker alleges, YouTube promises its users that it employs "a combination of human reviewers and machine learning" and consults with outside experts to ensure compliance.

### 2. *Lady Freethinker's alleged acceptance*

Lady Freethinker is a registered 501(c)(3) nonprofit organization founded in 2015.[2] It alleges that YouTube's stated policies and promises of a platform free of animal abuse content enticed Lady Freethinker to accept and agree to YouTube's terms of service and join the platform. YouTube offered that platform with explicit promises that animal abuse content would not be allowed, and Lady Freethinker accepted the offer and joined the website. Consideration was provided in the form of Lady Freethinker's use of the website, adherence to YouTube and Google's rules, and bringing in donors and followers to the YouTube platform. In agreeing to participate on YouTube's platform, Lady Freethinker allegedly relied on YouTube's and Google's promises and believed that they meant what they said and were truthful in their representations.

---

[2] Lady Freethinker asserts on appeal that its mission is "to help build a world that thinks beyond the norms that enable human-caused suffering and evolve to a free and peaceful society for all beings."

3

### B. Animal abuse videos—the alleged breach

Despite its promises, YouTube has allowed or failed to remove some videos displaying explicit animal abuse, suffering and torture. Lady Freethinker has identified more than 100 YouTube channels "with tens of millions of subscribers, and more than 2,000 videos with over a billion 'views' of animal abuse, torture, and cruelty of the type YouTube expressly promises will not appear on its platform."

The animal abuse videos shown on YouTube include "forced predatory interactions in which young animals are purposely tortured, harmed, or killed, as well as staged 'rescues' where animals are intentionally put into dangerous conditions… only so the video can look like the animal is saved from near death by the very persons that put them in harm's way." Other animal abuse videos show "animal suffering, neglect, or mistreatment clearly intended to shock the viewer or glorify the abuse — including the depraved torture of baby monkeys by hacking them apart with machetes and putting them in blenders."

### C. Complaints and demurrers

Lady Freethinker filed the initial complaint in this action in Santa Clara County Superior Court on October 18, 2021, alleging breach of contract and related causes of action against Google. Google demurred on the grounds that section 230 barred the claims and that they otherwise failed to state facts sufficient to constitute causes of action.

The trial court sustained the demurrer on section 230 grounds and granted leave to amend. Specifically, the court held that, although Lady Freethinker's causes of action were styled as claims for breach of contract and negligent misrepresentation, they actually treated Google as a publisher and sought to hold it liable for harmful third-party content. According to the trial court, section 230 provides that " '[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section,' " yet that was exactly was Lady Freethinker sought to do.

4

Lady Freethinker then filed the operative first amended complaint on August 29, 2022 (complaint). The complaint sets forth the factual allegations summarized above, and asserts four causes of action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) violation of California Business and Professions Code, section 17500, the False Advertising Law, and (4) violation of California Business and Professions Code, section 17200, the Unfair Competition Law (UCL).

The breach of contract action alleges that YouTube and Google's offer, and Lady Freethinker's acceptance of the offer pursuant to the terms of service and community guidelines, constituted a contract that Google breached by allowing the animal abuse videos to be seen on YouTube, which damaged Lady Freethinker reputationally and financially as a result.

Google demurred again on the same grounds.

The trial court once again sustained the demurrer on section 230 immunity grounds, this time without leave to amend. The court explained that, despite the amendments to the complaint, the substance of the claims remained the same: Google failed to prevent animal abuse videos from being shown on YouTube, in violation of its own terms of service and community guidelines. Relying chiefly on *Cross v. Facebook* (2017) 14 Cal.App.5th 190, 207 (*Cross*), and *Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12 (*Murphy*), the trial court held that Lady Freethinker's claims still treated Google as a publisher or speaker of information provided by another information content provider. Ultimately, the court explained, the source of Lady Freethinker's alleged injuries—the basis for its claim—is the content of the videos and Google's failure to remove them. Accordingly, section 230 bars the complaint.

Judgment of dismissal was entered on January 24, 2023. Lady Freethinker timely appealed.

## II. DISCUSSION

Lady Freethinker argues that the complaint alleges clear breach of contract and related causes of action, which derive from contractual obligations rather than from YouTube's or Google's conduct as a speaker or publisher of third-party content. Accordingly, it argues, the claims are not barred by section 230. In addition, Lady Freethinker contends that its causes of action sufficiently state claims for relief.

Google argues that the alleged "promises" cited by Lady Freethinker were not actually promises, but instead merely "content policies" which existing precedent has recognized as "insufficient to justify an exception to section 230 immunity." Creative pleading cannot defeat the broad scope of section 230, it argues, and YouTube cannot be held liable for failing to exclude offensive third-party content from its platform. Lastly, Google argues that, even if section 230 does not bar Lady Freethinker's claims, they fail to state cognizable causes of action.

### A. Applicable law and standard of review

"When reviewing a ruling on a demurrer, we examine de novo whether the complaint alleges facts sufficient to state a cause of action." (*Liapes v. Facebook* (2023) 95 Cal.App.5th 910, 919 (*Liapes*), citing *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558 (*Regents*).) " 'We assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.' [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.' " (*Liapes, supra*, at p. 919, quoting *Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 440.)

"We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' " (*Liapes, supra,* 95 Cal.App.5th at p. 919, quoting *Regents, supra*, 220 Cal.App.4th at p. 558.) "The plaintiff must demonstrate the court erroneously sustained the demurrer and 'must show the complaint alleges facts sufficient to establish every element of each cause

of action.' " (*Liapes, supra*, at p. 919, quoting *Rakestraw v. California Physicians'*
*Service* (2000) 81 Cal.App.4th 39, 43.)

Section 230 " 'immunizes providers of interactive computer services against
liability arising from content created by third parties.' " (*Liapes, supra,* 95 Cal.App.5th
at p. 928, quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*
(9th Cir. 2008) 521 F.3d 1157, 1162, fn. omitted (*Roommates*).)  "Congress enacted
section 230 'for two basic policy reasons: to promote the free exchange of information
and ideas over the internet and to encourage voluntary monitoring for offensive and
obscene material.' " (*Hassell v. Bird* (2018) 5 Cal.5th 522, 534 (*Hassell*), quoting
*Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1122.)[3]

Section 230, subdivision (c)(1) states:  "No provider or user of an interactive
computer service shall be treated as the publisher or speaker of any information provided
by another information content provider."  Section 230, subdivision (e)(3) provides:  "No
cause of action may be brought, and no liability may be imposed under any State or local
law that is inconsistent with this section."

An "interactive computer service" is defined in the statute as "any information
service, system, or access software provider that provides or enables computer access by
multiple users to a computer server, including specifically a service or system that
provides access to the Internet and such systems operated or services offered by libraries
or educational institutions."  (§ 230, subd. (f)(2).)  The statute also defines "information
content provider" as "any person or entity that is responsible, in whole or in part, for the

---

[3] Although federal precedents interpreting section 230 are not binding upon this
court, "where the decisions of the federal courts on a federal question are ' " 'both
numerous and consistent,' " ' we should hesitate to reject their authority [citation]." (*Doe
II v. MySpace, Inc.* (2009) 175 Cal.App.4th 561, 571, quoting *Barrett v. Rosenthal* (2006)
40 Cal.4th 33, 58 (*Barrett*); see also *Etcheverry v. Tri–Ag Service, Inc.* (2000) 22 Cal.4th
316, 320–321 ["While we are not bound by decisions of the lower federal courts, even on
federal questions, they are persuasive and entitled to great weight."].)

creation or development of information provided through the Internet or any other interactive computer service." (§ 230, subd. (f)(3).)

Read together, these two provisions " 'protect from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.' " (*Murphy, supra,* 60 Cal.App.5th at p. 24, quoting *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1100–1101, fn. omitted (*Barnes*).)[4]

The California Supreme Court has explained that these provisions are to be construed broadly in favor of immunity. (*Hassell, supra,* 5 Cal.5th at p. 544; *Murphy, supra,* 60 Cal.App.5th at p. 25.) The statute conveys "an intent to shield Internet intermediaries from the burdens associated with defending against state law claims that treat them as the publisher or speaker of third party content." (*Hassell,* at p. 544.) Section 230, subdivisions (c)(1) and (e)(3) "have been widely and consistently interpreted to confer broad immunity against defamation liability for those who use the Internet to publish information that originated from another source." (*Id.* at p. 535, quoting *Barrett, supra*, 40 Cal.4th at p. 39.)

"Accordingly, section 230 protects an interactive computer service provider's curation of content on its platform from ' " 'claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.' " ' (*Prager University v. Google, LLC* (2022) 85 Cal.App.5th 1022, 1032 (*Prager*), quoting *Barrett, supra*, 40 Cal.4th at p. 43.)

Notwithstanding this broad construction, certain claims against interactive computer services may fall outside the scope of section 230 immunity. For instance,

---

[4] The parties agree that YouTube is an interactive computer service—accordingly, our discussion below focuses only on the second and third elements.

8

where a cause of action alleges breach of a duty that springs from an enforceable promise, and does not inherently treat the defendant as the publisher or speaker of third-party content, the immunity may not apply. (*Murphy, supra,* 60 Cal.App.5th at p. 31, citing *Cross, supra,* 14 Cal.App.5th at p. 207.)

In addition, interactive computer service providers only have immunity if they are not also an information content provider — "that is, someone 'responsible, in whole or in part, for the creation or development' of the content at issue." (*Liapes, supra,* 95 Cal.App.5th at p. 928, citing § 230, subd. (f)(3), *Roommates, supra,* 521 F.3d at p. 1162.) "Passively displaying content 'created entirely by third parties' renders the operator only a service provider 'with respect to that content.' (*Roommates*, at p. 1162.) 'But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider.' [Citation.] 'Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.' " (*Liapes, supra,* 95 Cal.App.5th at p. 928.)

### B. Analysis

#### 1. Section 230 immunity

Lady Freethinker's claims satisfy all three conditions for immunity under section 230(c)(1). (*Murphy, supra*, 60 Cal.App.5th at p. 25.) First, as noted above, there is no dispute here that Google and YouTube are interactive computer services, defined in section 230 as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." (§ 230(f)(2).)

Turning to the second and third conditions, we conclude that Lady Freethinker's claims ultimately seek to treat Google as the publisher or speaker of content provided by another information content provider. (*Cross, supra*, 14 Cal.App.5th at p. 206; § 230(c)(1).) Both the breach of contract and breach of implied covenant of good faith

9

and fair dealing causes of action, for instance, are predicated on YouTube "allowing hundreds of animal abuse videos." Similarly, the causes of action for violation of the False Advertising Law and the Unfair Competition Law are premised, respectively, on Google's "false misrepresentation that it would not allow animal abuse videos," and its "fraudulent business acts or practices by deceptively advertising and holding out its platform as one where extreme and gratuitous animal abuse will not be allowed."

Google's actions allowing the animal abuse videos to be shown on YouTube thus fall squarely within the scope of a publisher's traditional editorial functions—deciding whether to publish, withdraw, postpone or alter content. (*Prager, supra,* 85 Cal.App.5th at p. 1032.) Lawsuits seeking to hold service providers liable for the exercise of such functions are barred. (*Murphy, supra,* 60 Cal.App.5th at p. 26; *Barrett, supra*, 40 Cal.4th at p. 43; *Roommates, supra*, 521 F.3d at pp. 1170–1171 ["any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"].) Google's actions in allowing the animal abuse videos to be shown and failing to remove them amount to publishing decisions not to prevent or remove the videos—that is, " 'deciding whether to exclude material that third parties seek to post online.' " (*Murphy, supra,* 60 Cal.App.5th at p. 24, quoting *Roommates, supra*, 521 F.3d at pp. 1170–1171.)

Finally, the third condition is satisfied here, as there is no dispute that the offensive content at issue was created and posted by other information content providers, and not by YouTube, and the complaint alleges that YouTube "allows" animal abuse videos to be displayed on its platform. (§ 230(f)(3) ["information content provider" defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"].)

Accordingly, Lady Freethinker's claims are barred by section 230.

## 2. *Lady Freethinker's contract-based arguments*

Lady Freethinker argues that its claims are not barred by section 230 because they do not actually seek to treat Google as a publisher or speaker of content. Instead, it argues, Google's liability in this case derives from whether it lived up to its contractual obligations—that is, its specific contractual promises not to allow certain offensive content. According to Lady Freethinker, the complaint is not based on Google or YouTube's exercise of discretion, but rather "on its breach of its express promise to provide a certain type of platform." Lady Freethinker contends that it decided to use YouTube's services only after "being assured by YouTube that it was not going to be aligning itself with an organization that is complicit in animal abuse." That generated a legal duty distinct from that of a publisher or speaker, it argues, so that section 230 cannot bar the claims.

It is true, as Lady Freethinker argues, that section 230 does not necessarily provide immunity for all contract-based causes of action, and "some courts have rejected the application of section 230 immunity to certain breach of contract and promissory estoppel claims." (*Murphy, supra,* 60 Cal.App.5th at p. 28.) In *Barnes*, for instance, the plaintiff sued Yahoo after her ex-boyfriend posted unauthorized false profiles of her on its website. (*Barnes, supra*, 570 F.3d at pp. 1098–1099.) When she demanded that Yahoo remove the profiles, Yahoo's director of communications contacted her and told her he would " 'personally walk the statements over to the division responsible for stopping unauthorized profiles and they would take care of it.' " (*Id.* at pp. 1098–1099.) Barnes then sued after Yahoo still failed to remove the content, alleging negligence and promissory estoppel causes of action. (*Id.*)

The Ninth Circuit distinguished the two causes of action. Section 230 barred the negligence cause of action because "the duty that Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher—the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles." (*Barnes, supra*, 570 F.3d at p. 1103.)

11

But the promissory estoppel cause of action was not barred because "the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant. [Citation.] Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." (*Id.* at p. 1107.)

However, since *Barnes* was issued, numerous courts have recognized the limited scope of its holding on this issue and have rejected attempts to evade section 230 liability by asserting distinguishable contract-based causes of action.

In *Cross*, for example, a country rap artist and two affiliated entities sued Facebook over its failure to remove a page that incited violence and generated death threats against the artist and his team. (*Cross, supra*, 14 Cal.App.5th at p. 194.) Facebook filed an anti-SLAPP motion, which the trial court granted on section 230 grounds as to causes of action for breach of contract, negligent misrepresentation, and negligent interference. (*Ibid.*) The court of appeal affirmed that ruling, determining that the plaintiffs had not demonstrated a likelihood of prevailing on the merits of their claims because they were barred by section 230 immunity. (*Ibid.*)

Plaintiffs argued that their complaint alleged Facebook was liable because of its own promises and representations, not because of any third-party statements. (*Cross, supra*, 14 Cal.App.5th at p. 206.) Specifically, they argued that Facebook had required the plaintiff rap artist to accept its terms of service to sign up for the website, which terms prohibited harassing and violent speech against users and explicitly stated that the website "remove[s] credible threats of physical harm to individuals." (*Id.* at p. 201.) For that reason, they contended, section 230 did not apply, as it does not immunize website providers for failing to adhere to legally enforceable promises like the ones Facebook had made. (*Ibid.*)

The court acknowledged existing precedent that, "in evaluating whether a claim treats a provider as a publisher or speaker of user-generated content, 'what matters is not

the name of the cause of action'; instead, 'what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another.' " (*Cross, supra*, 14 Cal.App.5th at p. 207, citing *Barnes, supra,* 570 F.3d at pp. 1101–1102.)  Based on that principle, the court construed the plaintiffs' claims as being predicated on a failure by Facebook to remove content posted by others, notwithstanding their labels—behavior that is immunized by section 230. (*Cross, supra*, 14 Cal.App.5th at p. 207.)

Similarly, in *Murphy*, the plaintiff posted several messages on Twitter that the company deemed to violate its hateful conduct rules.  (*Murphy, supra,* 60 Cal.App.5th at p. 17.)  Twitter removed the posts and later permanently suspended the plaintiff's account.  (*Ibid*.)  She then sued Twitter, alleging causes of action for breach of contract, promissory estoppel, and violation of the UCL, on the theory that Twitter's actions breached its user agreement.  (*Ibid*.)  The court of appeal held that section 230 barred the claims because the plaintiff's causes of action sought to hold Twitter liable for its editorial decisions to block the plaintiff's content from appearing on its platform.  (*Ibid*.)

Rejecting the plaintiff's reliance on *Barnes,* the court explained that *Barnes* "never suggested… that *all* contract or promissory estoppel claims survive CDA immunity." (*Murphy, supra,* 60 Cal.App.5th at p. 29.)  Instead, that opinion had explained that, "as a matter of contract law, the promise must 'be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration," and that "a general monitoring policy ... does not suffice for contract liability."  (*Ibid*., quoting *Barnes*, *supra*, 570 F.3d at p. 1108.)  For that reason, the court held that the plaintiff's allegations at issue—that Twitter " 'enforced its Hateful Conduct Policy in a discriminatory and targeted manner' " by removing her tweets and suspending her account—amounted to attacks on Twitter's "interpretation and enforcement of its own general policies rather than breach of a specific promise."  (*Murphy, supra,* 60 Cal.App.5th at pp. 29–30.)

13

The court rejected the plaintiff's argument that section 230 did not apply because the only information at issue was Twitter's own promises, rather than information provided by another content provider. (*Murphy, supra,* 60 Cal.App.5th at p. 26.) As the court explained, assessing whether a particular claim actually requires the court to treat the defendant as the publisher or speaker of third-party information prevents a plaintiff from avoiding the broad immunity of section 230 through creative pleading or litigation strategy "to accomplish indirectly what Congress has clearly forbidden them to achieve directly." (*Murphy, supra,* at p. 27, quoting *Hassell, supra*, 5 Cal.5th at pp. 542, 541.)

A different panel of this court reached a similar conclusion in *Prager.* In that case, the plaintiff alleged that Google and YouTube restricted access to its videos because of the plaintiff's political and religious views, and contended that the defendants subjected themselves to liability through their terms of service, so that section 230 did not apply. (*Prager, supra*, 85 Cal.App.5th at p. 1028.) The court rejected those claims, finding each of them deficient "as a matter of either law or pleading." (*Id.* at p. 1035.) It recognized the holding in *Murphy* that section 230 forecloses liability where the plaintiff did not identify an enforceable promise that was allegedly breached, and the statement in *Barnes* that a promise "vague and hedged about with conditions" does not suffice. (*Prager, supra,* 85 Cal.App.5th at p. 1036, quoting *Barnes, supra*, 570 F.3d at pp. 1106, 1108.) It then concluded that the plaintiff's contractual theories were barred because they were "irreconcilable with the express terms of the integrated agreements." (*Prager, supra*, at pp. 1036–1037.)

Most recently, a different panel of this court considered a lawsuit against YouTube and Google by Steve Wozniak and 17 other plaintiffs, asserting nine causes of action stemming from a cryptocurrency scam perpetrated on YouTube. (*Wozniak v. YouTube, LLC* (2024) 100 Cal.App.5th 893 (*Wozniak*).) With respect to the contract-based causes of action, the plaintiffs argued that they were based on defendants' "public and widely publicized promises about providing excellent security, protecting against

14

scams, ensuring the accuracy of video metrics and other video and channel information, and using Plaintiffs' personal non-public information and data in a responsible way." (*Id.* at p. 918.) According to the plaintiffs, those claims were based on breaches of duties and promises that had nothing to do with content moderation. (*Ibid.*)

Analogizing to *Murphy*, the court held that the alleged "promises" were more akin to general policies or statements made by defendants in their capacity as publishers, rather than specific, personalized, well-defined offers or promises. (*Wozniak, supra,* 100 Cal.App.5th at p. 920.) Accordingly, the claims were barred by section 230. (*Ibid.*)

As these cases demonstrate, merely because a cause of action is framed and labeled as a breach of contract or related claim does not remove it from the scope of section 230 immunity. Instead, a court must evaluate a cause of action to determine whether it seeks to treat an interactive computer service as a publisher or speaker of third-party information. That may include assessing what a plaintiff's claim "amounts to" or identifying the gravamen of a complaint and the nature of the alleged injurious conduct, notwithstanding the plaintiff's labels and characterization of its own causes of action. (*See, e.g., Murphy, supra*, 60 Cal.App.5th at p. 30 ["gravamen" of plaintiff's complaint "seeks to hold Twitter liable, not for specific factual representations it made, but for enforcing its Hateful Conduct Policy against her and exercising its editorial discretion to remove content she had posted"]; see also, *Roommates, supra*, 521 F.3d at pp. 1170–1171 ["any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"].) It may also include assessing the sufficiency of a cause of action as pleaded from a contract standpoint, including whether it is based on general policies or a personal, well-defined, enforceable promise. (See, e.g. *Prager, supra*, 85 Cal.App.5th at pp. 1035–1036; *Murphy, supra,* 60 Cal.App.5th at p. 29; *Barnes*, *supra*, 570 F.3d at p. 1108.)

Consistent with this precedent, we conclude that Lady Freethinker's causes of action, despite being framed as contract-related claims, seek to treat Google as a publisher or speaker of third-party information, and are therefore barred by section 230.

Lady Freethinker argues that *Murphy* and *Cross* are distinct because the defendants had made specific decisions related to what content was placed on the internet—"that is, the actions were the kind of exempted determinations about whether to keep or remove certain content." By contrast, Lady Freethinker contends, this case deals with a "specific contractual promise not to allow certain content." The defendants in *Murphy* and *Cross* were making "discretionary publishing decisions," Lady Freethinker argues, while here it is suing not based on YouTube's exercise of discretion but on its breach of an express promise.

We find the purported distinctions unavailing. In all three cases, the breach of contract claims alleged that the defendants failed to comply with their own general terms of service, but the claims ultimately were predicated on traditional editorial decisions regarding third-party content. In *Cross*, Facebook failed to remove an offensive and threatening page, allegedly in violation of its terms of service which prohibit harassing and violent speech and state that the website removes threats of physical harm. (*Cross, supra*, 14 Cal.App.5th at pp. 194, 201.) In *Murphy*, Twitter's removal of the plaintiff's posts and account allegedly violated Twitter's own user agreement and enforced its own hateful conduct policy in a discriminatory manner. (*Murphy, supra,* 60 Cal.App.5th at p. 17.) And here, YouTube's and Google's failure to prevent and remove the animal abuse videos allegedly violated their terms of service and community guidelines.

In all three cases, the defendants' actions that gave rise to the allegedly injurious behavior constituted traditional editorial functions such as deciding whether to publish, withdraw, postpone or alter content, the kind barred by section 230. (*Prager, supra,* 85 Cal.App.5th at p. 1032, citing *Barrett, supra*, 40 Cal.4th at p. 43.) As *Murphy* explained, "[c]ourts have found immunity for interactive computer services under section 230

16

regardless of whether the provider is alleged to have improperly removed objectionable content or failed to remove such content. '[N]o logical distinction can be drawn between a defendant who actively selects information for publication and one who screens submitted material, removing offensive content. … [Citation]; see *Barnes, supra,* 570 F.3d at p. 1102, fn. 8 [it is immaterial whether service provider's exercise of publisher's traditional editorial functions 'comes in the form of deciding what to publish in the first place or what to remove among the published material'].) (*Murphy, supra*, 60 Cal.App.5th at p. 27, fn. 5.)

Lady Freethinker analogizes instead to *Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200 (*Lee*). In that case, the plaintiff sued Amazon for violating Proposition 65 by offering mercury-containing products for sale on its website without providing a warning. (*Lee, supra,* 76 Cal.App.5th at p. 209.) The court of appeal held that Amazon was not protected by section 230 because the plaintiff's claims were "based on Amazon's conduct in exposing consumers to mercury-containing products without providing Proposition 65 warnings, not its failure to monitor, modify or remove third parties' listings for the products, and thus do not require treating Amazon as speaker or publisher of third-party content." (*Id.* at p. 254.)

We do not find the case analogous. As we have explained, Google's actions allowing the animal abuse videos to be shown on YouTube fall squarely within the scope of a publisher's traditional editorial functions, and Lady Freethinker's causes of action seek to treat Google as a publisher or speaker of third-party information.

Lastly, Lady Freethinker argues that finding section 230 immunity here would effectively provide YouTube "blanket immunity just for being YouTube—just because the nature of its business is bound up with content posted on the internet." As we have explained, though, there are limits to the scope of section 230 liability. (See, e.g., *Barnes, supra*, 570 F.3d at p. 1107; *Murphy, supra*, 60 Cal.App.5th at p. 29.) Where an interactive computer service's asserted liability derives from a contractual obligation and

17

the cause of action does *not* inherently seek to treat the defendant as a publisher or speaker of third-party information, the immunity may not apply. Other cases have also found section 230 inapplicable to non-contract-based claims. (See, e.g., *Doe v. Internet Brands, Inc.* (9th Cir. 2016) 824 F.3d 846 [no section 230 immunity for negligent failure to warn]; *Lemmon v. Snap, Inc.* (9th Cir. 2021) 995 F.3d. 1085 [defendant's duty underlying negligent design claim differed markedly from duties of publishers as defined in section 230].)

On the facts presented here, though, and in light of the California Supreme Court's guidance that section 230 is to be interpreted broadly in favor of immunity, we conclude Lady Freethinker's causes of action are barred. (*Hassell, supra,* 5 Cal.5th at p. 544.)[5]

### III.  DISPOSITION

The judgment is affirmed. Google may recover its costs on appeal.

---

[5] Because we conclude that section 230 bars Lady Freethinker's causes of action, we need not address the parties' alternative arguments regarding whether the causes sufficient state claims for relief. In addition, because Lady Freethinker has not argued on appeal that leave should have been granted to amend its complaint again, we consider any such argument forfeited. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684; *ComputerXpress*, *Inc*. *v*. *Jackson* (2001) 93 Cal.App.4th 993, 1011.)

_____

                                    Wilson, J.


WE CONCUR:



_____

      Greenwood, P. J.




_____

      Danner, J.




*Lady Freethinker v. Google LLC*
H050875